We'll call the case of Michael Fletcher v. Edward Grynkewicz. Mr. Sheehan, you should know Ms. Monion that Mr. Sheehan was once one of my law clerks. If you have a problem with that, I didn't think you would. Since particularly this is a pro bono case, we thank your firm for taking this appeal. Mr. Sheehan. He said he recovered after the clerkship. He's had five years. Well, I believe. May it please the court. He was rehabilitated by Ms. Grynkewicz. That's true, Judge. May it please the court. Christian Sheehan for the appellant, Michael Fletcher. With the court's permission, I would like to reserve three minutes for rebuttal. That request will be granted. Thank you. For four main reasons, the district court clearly erred in applying the Tabron factors and denying Mr. Fletcher counsel. First, this case presents complicated issues that were difficult for any lay person to address, let alone an incarcerated pro se litigant. To win, Mr. Fletcher had to establish not only a causal connection between his injuries and a taser shock, he also had to explain to the jury the type of police control technique at issue, a taser, and the physical effects of that. Extra testimony was required on both counts. Second, it cannot be seriously disputed that if Mr. Fletcher had counsel, he could have destroyed Officer Grynkewicz's credibility. Officer Grynkewicz offered testimony in this case that flatly contradicted testimony he gave at a suppression hearing in Mr. Fletcher's criminal case. But Mr. Fletcher did not understand the evidentiary rules well enough to use that transcript for impeachment. Experienced counsel surely would have. Third, despite the odds, Mr. Fletcher's case survived summary judgment and made it all the way to trial. Even if the district court was right that Mr. Fletcher was able to submit adequate pretrial filings, standing up in a courtroom and presenting a case to a jury is something else entirely. With experienced trial counsel on the other side, Mr. Fletcher was at a tremendous disadvantage. The final point is we have undisputed, concrete evidence that Mr. Fletcher did not know the first thing about taking discovery, and as a result, he didn't do so. He repeatedly wrote to the district court expressing his concerns about the discovery process and asking for guidance. He received no response. This is a one-issue case, as I see it, and the issue, as you stated in your brief, is did the district court err in denying Fletcher's repeated requests for appointment of counsel? Now, there were, over a two-year period of time, six such motions and a motion for reconsideration. Is it your position that each of the several magistrate judges who decided these various motions abused his or her discretion? Judge Barrett, we are appealing all six orders. So you have to show an abuse of discretion on all six, and you don't have one particular favorite? I think if you look at the last five, that they are the most compelling. The problem I'm having here is this was over a two-year period of time. That's correct. And what we really have to do is focus on what the particular judge had before him or herself at the time of the motion. You're looking to subsequent things that happened over the two-year period, including the jury trial itself, and arguing back to when all of that should be anticipated by the particular magistrate judge at issue. Judge Barrett, let me make two points. First, yes, you look at the district court's decision at the time it was made, and the district court's evidentiary rulings show that it should have understood that several of the Tabron factors were satisfied. For example, the district court denied Mr. Fletcher's motion to exclude certain impeachment evidence because, quote, the case was likely to turn on credibility issues. But the district court denied Mr. Fletcher's motion for appointment of counsel because the case was not likely to turn on credibility issues. That's contrary. He ended up filing motions. He ended up winning a summary judgment motion against the defendant. He ended up winning a jury – I mean, going to jury trial, going to a full jury trial. He had wins within that two-year period. So it's not as if he is – he actually – well, he had some successful rulings in there, and he made himself known, and he made himself heard. Judge Barrett, that's absolutely correct. But this court has made clear that submitting – the fact that a pro se litigant can submit adequate pretrial filings, which the court must liberally construe, does not mean that that same litigant can adequately present his case at trial, where, as the district court instructed the jury here, they must consider both parties on a level playing field. It's a different skill set, and one does not necessarily indicate that he will be able to do the other effectively. Well, I know that, but we're not looking for Edward Bennett Williams here. This is not what the district judge should be or the magistrate judge should be looking for when they get a motion for appointment of counsel in a case such as this. That's right. Let me highlight a few key points that should have signaled to the district court that Mr. Fletcher needed an attorney. The first is that, like the Parham and Montgomery cases in which this court reversed district court orders denying motions for appointment of counsel, this case required expert testimony. It required two types of expert testimony. The first is a medical expert to establish a causal connection between Mr. Fletcher's injuries and a taser shot. He tried to get one. He did try to get one, and that's an indigent litigant's difficulty in obtaining an expert. It's one of the reasons that that's a tabron factor. This court has said, although it's difficult for an attorney to find an expert, it's much easier for an attorney than it is for a person. But there was no evidence otherwise. I gather from the hospital reports or anything that the injuries of which he was complaining existed. That is what the district court said, and that is a clearly erroneous finding for several reasons. First, the district court made that finding without the benefit of an expert report from Officer Grinkowitz and without a single citation to medical authority. The medical authority that we cite in our opening brief shows that several of the conditions for which Mr. Fletcher was treated are linked to taser shots. The second point is that one of the injuries for which Mr. Fletcher was treated was a hernia, and he was treated for that a year and a half after the taser shot. And the district court said simply because of the temporal remoteness, that could not have possibly been linked to a taser shot. But what those records actually show is that Mr. Fletcher began to complain of pain associated with a hernia a year and a half before he was seen by doctors. So that's right around the time that he was tased. Mr. Fletcher's deposition testimony is entirely consistent with that. So the district court's finding that no medical expert could link Mr. Fletcher's injuries to a taser shot is clearly erroneous and without a single citation to supporting authority. It's kind of a corollary of Judge Barry's question. I guess effectively you want to unwind what happened here. Obviously you have a verdict that's against you. How far back do you want to unwind this thing? Do you want to vacate the verdict, go back, retake discovery, start from scratch? I'm just wondering what you're asking for. Judge Chigaris, the only remedy that can fully cure the prejudice caused by the district court's denial of counsel is to appoint counsel and reopen discovery. See, I haven't read your papers to be complaining about, to make any complaint about the trial was less than fair. You're not saying that. You don't say it was an unfair trial. You don't even go into the excessive force argument. Your issue was what I said at the very beginning. Your issue was the six, seven failures to appoint counsel, period. That's correct. Judge Barry, the trial transcript is relevant because it shows the effect of the district court's denial of counsel. At the time, they decided these motions. They didn't have a trial transcript. That's correct. What would they do? In this case, you might say that the best evidence that the decision on appointment of counsel was wrong was when he gave what amounted to about two and a half pages of direct testimony. What was the district court supposed to do at that point? Stop the case and say, wait a minute, Mr. Fletcher, Mr. Krinkiewicz, I now think I was wrong. I've got to appoint counsel. Judge Fletcher, the district court should have anticipated that the opportunity to testify in a narrative fashion for an inexperienced person would be inadequate. Aren't you almost saying that as a rule that if the district court finds that there's a genuine issue of material fact, and here the question was whether or not he was tased the third time, you're almost saying as a rule that if the case is going to go to trial, you've got to appoint counsel. Isn't that the net result of what you're arguing? Judge Fletcher, we're not asking for any new rule. This case fits neatly into the existing Tebron rubric. This court does not need to go outside of that rubric to reverse. But if we agree with you here, it seems to me that any pro se litigant who was incarcerated, who needed to do discovery, would be entitled to counsel if, in fact, it was a jury trial. Judge Fletcher, I don't think that that's correct. There are several key facts that distinguish this case. The first is the need for two types of experts, which is what happened in Parham and Montgomery, and one of the key reasons why this court found that the district court abused its discretion. Parham was a deliberate indifference case. That's correct. It was a different test. This was an excessive force case, and the question that boiled down here was whether or not, Really, the question in this case, which the jury disbelieved your client, and believed Mr. Grinkowitz, was, was he tased a third time? Judge Fletcher, that is one question. That's an important question, and your client had to testify. The defendant had to testify here because he was the only one who would say he was tased three times. He was the only one at the events that night who would testify as he wished, testify to his story. That's correct, Judge Barry. He had to testify. How could counsel, even had one been appointed, save him from that disastrous testimony? Let me make three points. The first, backing up to discovery. One of the things Mr. Fletcher could have taken discovery about was the police logs of that night, which would have shown whether a second officer was carrying a taser, because Mr. Fletcher believes he was tased by a second officer, and Nina Wah said the same thing in her deposition. Mr. Fletcher also could have taken discovery from the taser data itself, from the actual machine, which would have conclusively shown how many times it was deployed. Turning to the narrative testimony point, experience counsel could have crafted Mr. Fletcher's testimony in a much more compelling way. It was disjointed, confusing, incomplete. He mixed legal argument with factual statements. It was very confusing. He didn't convey to the jury the full story. For example, he didn't say that his hands were in the air before he was tased. And finally, Magistrate Judge Carlson, I thought, did a terrific job shepherding him through this case, saving him from bringing in the charges, the 13 counts of which he was indicted, so that he could show something that was not only barely relevant, but highly prejudicial. Judge Barry, I see that my time has expired. Mr. Sheehan, we'll have you back on rebuttal. Okay, thank you. Ms. Munion. May it please the Court. Christine Munion on behalf of Officer Crankowitz. This was a straightforward federal court case, as straightforward as you possibly could get, and it's especially evident today with the two cases that were previously argued. This is a one-issue case, whether Officer Crankowitz used excessive force against Mr. Fletcher. That's not the issue before us. It is not the issue before this Court. The only issue that was raised is whether Mr. Fletcher deserved to be appointed counsel. But the simplicity of the case is one of those factors as to whether counsel should be appointed, which is why I'm bringing up the lack of complexity. Well, William Adversary points out that two experts were necessary in this case, and it didn't work out that way. How was the judge to know either? I mean, at the beginning, at the outset, how was the judge to know how many experts, if any, all of the things that were allegedly wrong here? Well, no experts were required for two reasons. How does the judge, when he or she has to decide this motion for appointment of counsel, how would he have any idea whether experts will be required or whether it's a complicated, a simple case? Well, in Grand Reconnoir, we know the Supreme Court has said excessive force cases are not that complicated. It typically comes down to the plaintiff, in this case Mr. Fletcher, saying excessive force was used against him, the officers and independent witnesses saying it was not. It's not a deliberate indifference case, such as was pointed out by Judge Fisher, where you see liability experts, where you see police officer experts come in and testify about what should have been done, whether there was probable cause. Excessive force cases come down to what happened on that night at that instant. And liability, we didn't have a liability expert, nor do we ever have. Very rarely an excessive force case have liability experts. In regards to the medical expert, which I believe was touched upon during argument, the jury didn't hear about medical evidence. Judge Carlson, Magistrate Judge Carlson, took the medical issue out of the case and said we'll come back and decide that later if we have a finding of liability against Officer Krinkowitz, which we did not find. I would point out to the court as well that Magistrate Judge Carlson also found that Officer Krinkowitz was entitled to qualified immunity, that based on the evidence as determined by the jury and the special interrogatories that they answered, that this officer was entitled to qualified immunity as a matter of law and that there was no liability against Officer Krinkowitz. That's clearly after the fact. The question is to the fact that the jury found that doesn't answer the question of whether or not the court was in error in not appointing counsel. That's true. Everything comes after the fact because Mr. Fletcher got a jury verdict which he disagreed with. What Mr. Fletcher is asking is that every excessive force person who files suit and gets a bad verdict can now come before this court and say, hey, I should have had an attorney, even in the most simplest of cases which we have here. That's not what he's asking for. He's only interested in his own case. I mean, what the net result of it may be has significant ramifications for the courts across our circuit. This is an important issue. In fact, I've heard complaints from magistrate judges in different parts of our circuit that, you know, when we say counsel should be appointed, do we know that there are not counsel available in most instances to appoint? Right. And what are they to do? And he couldn't have appealed the first or second or third or fourth or fifth. He needed a judgment in the case one way or the other before he could come before us. And to your point, though, as you pointed out earlier, there were three different magistrate judges who looked at the tape-on factors independently, five or six different times during the course of this litigation at different points in the litigation. Which tape-on factors do you think favor or do not favor Mr. Fletcher? Well, the first one clearly favors Officer Krinkowitz. Mr. Fletcher showed throughout the litigation that he was more than capable of understanding the facts. He was more than capable of filing motions, of responding to motions, defeating my motion for summary judgment, filing motions for continuances which were granted so that he could go out and try to get counsel. What about his testimony at trial, though? Three pages. Yeah. His testimony at trial was in accordance with the judge's order saying, well, we're going to let you, as long as you want, tell us what happened that night. Well, how else is he going to do it? He doesn't have a lawyer. That's right. He had to testify by narrative. He had to. That's exactly right. And that's what he did. It was his determination as to how long he wanted to stand up there and tell his story that night. And it wasn't a lot of his case, didn't a lot of his case depend on cross-examination and the vigor of it, and he didn't have some of the documents that would have allowed him to more artfully cross-examine. I disagree. The medical evidence that was presented to Judge Carlson, but not presented to the jury, clearly showed that what Mr. Fletcher was asserting were his injuries were not corroborated by the medical evidence. The emergency room report, Mr. Fletcher asserts in his complaint that he was tasered in his testicles and suffered a heart attack as a result of the tasering event. The emergency room records completely contradicted those assertions. There was no removal of the tasers from his testicles. There's no heart attack occurring in the emergency room. He was high on, I forget what drug, and a determination was made in the emergency room that he had to be knocked out because he was so violent to the emergency room personnel. What about the prior complaint against your client that he had previously tasered somebody improperly? There's no Monell claim in the case. Mr. Fletcher did not file a Monell claim. It's never been a part of the case. I know he didn't, but he could have cross-examined them on that. I don't believe so. Not on the Monell claim. In a clear excessive force case, prior events have happened. If Franklin says I didn't taser him the third time, couldn't he at least use those records to show on such and such occasion? Wasn't it alleged that, in fact, you improperly tasered a John Doe defendant? No, I disagree. I filed many motions in Luminae when it's a straight excessive force case, and the Monell claim has been either dismissed or never filed, and it's absolutely irrelevant as to what happened on the night in question. You didn't even have to file one here, though. I did not. It was a part of the case. Because he didn't have the records. Well, it wasn't part of the case. He didn't say. He never asserted that there was a Monell case. Maybe he could have if he had a lawyer. Anything's possible. That's true. It also could have been dismissed through a motion, even with a lawyer. Can I ask you a question? On page 20 of your adversary's brief, footnote 7, they make mention that Mr. Fletcher made an attempt at discovery, and your client responded that you produce all materials in your possession. What materials were produced? What did he have? Well, as part of my initial disclosures, I would have turned over every document that would have been in the police file and said I'm going to use. So you did that? Yes. I filed initial disclosures and sent it to Mr. Fletcher in prison. He had the police file for this arrest. He had the police file. Okay. Ms. Monell, just a question of I take it this isn't your first case defending officers, police officers, either in this municipality or elsewhere. Are you seeing more pro se cases coming? Are you seeing more pro se cases like this being litigated? I will answer that question the following way. Yes. In particular, where a person such as Mr. Fletcher is found guilty of a crime and they turn around and file civil rights lawsuits pro se, and it's become prevalent in the system where they're angered by their sentence and they're seeking retribution through a civil case and have a difficult time finding counsel to take it based on the record. Yes. Heck versus Humphrey eliminates a lot of the claims, but an excessive force claim can still go forward. I just ask that question because in dealing with this issue, we have close to 60% of our appellate docket now is pro se, and there are various percentages of pro se litigation across the district. So a decision that we would make in this case could have very significant ramifications for the district courts. Yes, I agree. I think looking back, as you always do, sitting as the Third Circuit, Mr. Fletcher had his day in court. He had three magistrate judges review the taper-on factors on five or six different occasions at different parts of this litigation as it progressed over the four years of litigation and went through those factors very thoroughly. And I would submit to this court that none of those magistrate judges abused their discretion in making the determination that counsel should not have been given to Mr. Fletcher. Is there anything else you'd like to add? No, thank you. Thank you. Mr. Sheehan? I'd like to make five brief points. This court seized on the importance of impeachment in this case. It was critically important because this case turned so heavily on credibility issues. In addition to impeaching Officer Grankowitz with his prior use-of-force incidents, we filed here a motion to supplement to add a suppression hearing transcript from Mr. Fletcher's criminal case to the record because at trial in this case, Officer Grankowitz said, I tased Mr. Fletcher in the back of his leg and arm. At the suppression hearing, he testified that he tased Mr. Fletcher in the chest. This is relevant substantively because it affects the severity of force. It's also relevant because if Mr. Fletcher was able to expose this, he would have shown Officer Grankowitz to be untruthful. That's point number one. Point number two is that the turnover of magistrate judges actually weighs in Mr. Fletcher's favor because it resulted in contradictory decisions that severely prejudiced him. So there are two examples. One, earlier judges said the case would not involve expert testimony. The trial judge then excluded Mr. Fletcher's medical records and his taser evidence because he didn't have an expert. Earlier judges said the case would not likely turn on credibility issues. The trial judge denied Mr. Fletcher's motions in limine because credibility was so important. Point number three, medical evidence is absolutely relevant to liability as well as damages. This court said in the Sherrar and Mellot cases that whether the plaintiff was injured is a relevant factor in the liability determination. The district court here instructed the jury to consider whether Mr. Fletcher was injured, and defense counsel in her opening and closing emphasized the fact that Mr. Fletcher was not injured. That's point number three. Point number four is that because this case involved a taser, it's actually very similar to deliberate indifference cases. In deliberate indifference cases, medical and expert testimony is required to explain to the jury the seriousness of an injury that may not be apparent to them and the appropriate treatment. Here, we're not talking about physical strikes or a baton. We're talking about a taser. As the First Circuit held in the Jennings case, when you're dealing with a type of police control technique that jurors, lay jurors would not be familiar with, the best way to explain what that technique is and the circumstances under which it's reasonable to use it is expert testimony. And final point, point number five, this is in response to your question before I sat down, Judge Barry, is you asked if Judge Carlson helped Mr. Fletcher along the way. He did in certain respects, but he also held that expert testimony would not be required and then excluded Mr. Fletcher's medical records because he didn't have an expert. He held that expert taser testimony would not be required, but then he didn't allow Mr. Fletcher to introduce evidence about how serious multiple sustained taser shocks are because he didn't have an expert. Unless the Court has further questions. Thank you. Thank you, Mr. Sheehan. We thank both counsel for excellent arguments and once again thank your law firm, Sinead Harrison and Mr. Sheehan and Ms. Winkleman for their work on this case. We'll take the matter under advisement.